DOROTHY MARIE STEHLI and EMIL STEHLI, JR., her husband, v. RICHARD TODD THOMPSON, (formerly Richard Eyre Coote).

RICHARD TODD THOMPSON, (formerly Richard Eyre Coote), v. DOROTHY MARIE STEHLI, etc., et al.

10 So. (2nd) 123                                    Division A
October 16, 1942          Rehearing Denied November 12, 1942

Appeals from the Circuit Court for Dade County, Paul D. Barns and Arthur Gomez, Judge.

Loftin, Calkins, Anderson & Scott, and Vincent C. Giblin, for appellants first case above.

568

Stanley Milledge and Perry A. Nichols, for appellee, first case above.

Stanley Milledge and Perry A. Nichols, for appellant, second case above.

Vincent C. Giblin, Bart A. Riley, J. Aaron Abbott and Loftin, Calkins, Anderson & Scott, for appellees, second case above.

BUFORD, J.:

The plaintiff in the court below, on November 27, 1940, filed suit against his former wife (from whom he had procured divorce on the 21st day of March, 1939), her then husband and J. Aaron Abbott, an attorney who has at times represented the defendant, Dorothy Thompson, and also the plaintiff. He sought to set aside and have cancelled the assignment of certain securities which he had theretofore assigned and delivered to Dorothy and to have the same returned to him, and to have other property in possession of Dorothy returned to him. He also sought to have readjudicated the parternity of his son, averring that he was not the father, and to have vacated the former court decree requiring him to contribute to the support of such son (by way of parentheses, we will say here that the record fails to show any foundation in fact to support plaintiff's allegations in this regard), and to have Abbott return to him a sum of money equal to sums which he had paid Abbott as attorney's fees.

The record shows that on April 21, 1938, Dorothy filed against Richard for divorce. Before decree a reconciliation was effected and the parties resumed cohabitation in July, 1938. As part of the reconciliation agreement Richard agreed to assign and deliver to

Dorothy certain securities constituting a part of his inheritance from his mother which would come into his possession on his arriving at the age of twenty-five years, which would, and did, occur on July 24, 1938. About a month later, on August 6, and while the parties Dorothy and Richard were cohabiting as husband and wife, Richard, pursuant to such agreement, executed to Dorothy an assignment of securities aggregating in value some $34,000.00. The securities were not then in the physical possession of Richard but he did come into possession of same in January and February, 1939, and immediately ratified and completed the assignment by transfer and delivery to Dorothy of the securities involved.

A child was born to the Thompsons on December 24, 1938. The record shows that about the time of the birth of the child Dorothy began to display a violent temper toward Richard. This was also immediately following his gross misconduct hereinafter mentioned.

On March 10, 1939, Richard filed suit for divorce against Dorothy which resulted in decree wherein it was adjudicated, inter alia, as follows:

"and the parties hereto having entered into a stipulation with respect to a property settlement between them and with respect to the custody of the minor child of the parties hereto and with respect to the support and maintenance of said child, which the court finds to be reasonable, and upon a consideration thereof, it is

Ordered, Adjudged and Decreed that the Special Master's report of testimony and his findings and recommendations thereof be and the same are hereby approved and confirmed."

The stipulation as to property settlement was, inter alia, as follows:

"3. The defendant agrees to make, execute and deliver unto plaintiff a warranty deed to the following described real estate, together with all personal property located therein, except the personal belongings of the said defendant, situate in Dade County, Florida, to-wit: Lot Forty-two (42) and the northerly one-half of Lot Forty-three (43) of Block 'F' Section 'E' of Golden Beach, according to the plat thereof, as recorded in Plat Book 8, at page 122 of the Public Records of Dade County, Florida.

"4. The plaintiff agrees to make, execute and deliver assignment of the certificate of title and deliver unto the defendant that certain 1937 Dodge touring sedan automobile now in the custody of the said parties. The defendant agrees to make, execute and deliver an assignment of all her right, title and interest in and to that certain 1939 Packard Convertible Coupe now in the custody of the said parties.

"5. The defendant agrees to make, execute and deliver a bill of sale of all her right, title and interest in and to all furniture and other personal property now situated in the warehouse of John Stahl & Sons, Inc., 6-8 North Street, Mount Vernon, New York.

"6. That no alimony, temporary or permanent, attorneys fees, or suit money, shall be awarded unto the defendant, the defendant hereby waiving all claims for alimony, attorneys fees, or suit money, now due or hereafter to become due, the parties hereto *recognizing, confirming and adopting that certain property settlement agreement heretofore made and entered into by and between them on the 6th day of August, A. D. 1938.*" (Emphasis Supplied)

The decree here challenged provides and adjudicates as follows:

"This cause came on to be heard on final hearing after due notice on the exceptions to the report of the Master and the records and proceedings herein.

"The record is a long one but I have read and considered the same including the very able report filed by the Special Master in Chancery appointed herein.

"The defendants, Dorothy and Emil Stehli, did not testify. I find from the record as a whole that it establishes constructive fraud on her part.

The defendant, J. Aaron Abbott, testified and I find that he is not guilty of the conduct of fraud as charged, and I absolve him completely and entirely. I also find that the monies paid to Mr. J. Aaron Abbott, as attorney in the cause, were not excessive and they will be approved. Having read the record and being advised in the premises, it is, therefore

Ordered, Adjudged and Decreed as follows:

"1. The equities are with the defendant, J. Aaron Abbott and the Bill as to said defendant be and the same is hereby dismissed.

"2. The Bill of Complaint contains sufficient allegations to constitute a cause of action on the basis of constructive fraud and the Motion to Dismiss be and the same is hereby denied.

"3. That the assignment from the plaintiff to the defendant, Dorothy Marie Stehli, dated August 6, 1938, (Plaintiff's Exhibit No. 9 of the Master's Report) is null and void and the same is hereby cancelled and set aside and all property described in said assignment and any property now in the possession or control of any other defendants acquired with the

proceeds of the sale of any of the property described in said assignment is the property of the plaintiff.

"4. That the defendants, Dorothy Marie Stehli and Emil Stehli, Jr., shall within ten days of the signing of this decree deliver to the solicitors of record for the plaintiff the property described in said assignment of August 6, 1938, (less the sum of Twenty-five Hundred and no/100 ($2500.00) Dollars, heretofore paid by the defendant Dorothy Marie Stehli to the defendant J. Aaron Abbott) and in the event the said defendant fail to comply with the provisions of this paragraph in full they shall comply to the extent that they have such property now in their possession and control and they shall at the same time file with the Special Master, Will M. Preston, a sworn report showing what disposition has been made of the property which came into their possession by virtue of the assignment of August 6, 1938, together with a statement of all property to which they or either of them now hold the legal title or which is in their possession or control.

"5. That the defendants Dorothy Marie Stehli and Emil Stehli, Jr., are hereby enjoined and restrained from conveying, transferring, pledging or otherwise disposing or encumbering any property, real or personal, owned by them or in their possession or control until the further order of this Court, and that the temporary restraining order entered in this cause on November 30, 1940, be continued in full force and effect until the further order of this Court.

"6. That the defendant Dorothy Marie Stehli is entitled to fifty per cent (50%) of the proceeds arising out of the Golden Beach property together with fifty per cent (50%) of the proceeds of the sale of

the automobile and the household furniture and furnishings jointly owned by them.

"7. That the plaintiff shall render due account for such proceedings and such proceedings shall be accredited against the accounting due the plaintiff as hereinbefore decreed.

"8. That the jewelry in possession of the Receiver, St. Julian Palmer Rosemond, and left to him by his mother, is the property of the plaintiff and said Receiver is hereby directed to deliver the same to the Solicitor of record for the plaintiff and upon such delivery and the filing of his receipt therefor in this cause, the said Receiver and the surety on his bond are relieved of further liability.

"9. The compensation due the Receiver for his services is the sum of $30.00 less amount heretofore received to be taxed against and paid by the plaintiff in this cause.

"10. That the minor child born unto the defendant Dorothy Marie Stehli on December 24, 1938 is the child and heir of the plaintiff.

"11. That the Final Decree of divorce lately pending in this cause in which Richard Todd Thompson is the plaintiff and Dorothy Marie Thompson now Dorothy Marie Stehli is the defendant, Chancery Case No. 56554 be and the same is hereby reaffirmed.

"12. That the fee of the Special Master for services rendered to this date is hereby fixed and allowed in the sum of $1000.00 less amount heretofore received to be taxed as costs and to be paid by the plaintiff herein.

"13. The plaintiff is hereby ordered and directed to continue to pay to Dorothy Marie Stehli the sum of One Hundred ($100.00) Dollars per month hereby

allowed and awarded in the decree of divorce in the manner and form as was provided in said decree. That the court retains jurisdiction of the cause in that respect for further orders as may be necessary or proper in the event a change of conditions or necessity should be made to appear.

"14. The report of the Special Master in Chancery filed herein be and the same is hereby approved in all particulars except as modified by this decree.

"15. The court retains jurisdiction of the cause for the purpose of enforcing the terms of this decree and for the accounting under the terms of this decree and the reference heretofore made to the Special Master, Will M. Preston, is retained and continued until the further order of this court."

Dorothy and her husband appealed from that part of the decree adverse to them and Richard Thompson appealed from that part of the decree dismissing the proceedings as to Abbott. We consider both appeals.

The decree of divorce, supra, with its several related adjudications became absolute unless it was so tainted with fraud as to make it voidable, or was void because of lack of jurisdiction.

There are no such elements of fraud disclosed by this record as would constitute legal grounds for vacating the decree or any part of it. The chancellor adjudged (which adjudication is amply supported by the record) as follows:

"1. The equities are with the defendant, J. Aaron Abbott, and the Bill as to said defendant be and the same is hereby dismissed."

"11. That the Final Decree of Divorce lately pending in this cause in which Richard Todd Thompson is the plaintiff and Dorothy Marie Thompson now

Dorothy Marie Stehli is the defendant, Chancery Case No. 56554, be and the same is hereby reaffirmed."

The bill of complaint alleges and the proof shows that all things done by Dorothy in connection with the divorce case were with the full knowledge of and under the advice and counsel of J. Aaron Abbott, therefore if Abbott committed no fraud Dorothy must be likewise not guilty. See Williams v. Hines, 80 Fla. 690, 86 So. 695, but aside from this, the preponderance of the evidence clearly shows that every step and action taken by either Dorothy or Abbott was with the full knowledge, consent and acquiescence of the plaintiff Richard.

If, per chance, any fraud was committed which might cast a shadow upon the validity of the decree of divorce and property settlement, the plaintiff was as much a party to such fraud as was anyone else and, therefore, he can not be heard in a court of equity to pray for redress because he cannot approach the court with clean hands. 19 Am. Jur. 323, Sec. 469 et seq.

There is another elementary and fundamental reason why the plaintiff cannot prevail in this suit, i.e.: It is impossible for him to return to the defendant Dorothy her status quo ante the reconciliation agreement. It is not alleged that she did not have adequate grounds for divorce at the time when she filed her suit and at the time she entered into the reconciliation agreement pursuant to which she condoned her alleged grounds for divorce and thereby forfeited her right to proceed in that suit and acquire judgment including a property settlement against Richard. Under that agreemnt which is here sought to be rescinded, she condoned the past and for several months

thereafter lived and cohabited with Richard as his wife. He got what he bargained for. See McDonald v. Sanders, 103 Fla. 93, 137 So. 122, 126; Prior v. Oak Ridge Development Corp., 97 Fla. 1085, 119 So. 326; Williams v. Penn. Mutual Life Ins. Co., 6 Fed. (2) 322.

Richard admits that he was repeatedly guilty of adultery while living with Dorothy after the reconciliation and before she had committed the acts which he alleged as grounds for divorce. Therefore, it cannot be said that he was barred from effecting the return to status quo ante by the inequitable conduct of Dorothy. See 9 Am. Jur. 384, et seq. The record fails to show that she did not in good faith make, enter into and proceed to perform the terms of the contract.

It is elementary that one may not claim and accept the benefits flowing from a decree and at the same time seek to annul the unfavorable portions of the decree on the ground of fraud. He may not approbate and at the same time reprobate. 53 C.J. 968, Sec. 105 and cases there cited. 9 Am. Jur. 384 et seq.

"One May Not in a Suit to Set Aside a Final Decree in Chancery Seek to Take Advantage of Part Favorable to Him and Seek to Set Aside Portion Unfavorable."

The factual situation in most of the cases involves a plaintiff or defendant who has enjoyed the benefits of the favorable portion of a final decree in equity and later by a motion, petition, bill in the nature of a bill of review, or a bill to impeach on ground of fraud seeks to set aside or vacate unfavorable portions of the final decree, or to relieve himself of the burdens imposed while enjoying the benefits. It appears that

this situation is most prevalent in divorce proceedings. Hill v. Phelps, et al., 101 F. 650, 41 C.C.A. 569.

"Complainants had previously filed a bill in equity to obtain payment of a judgment against one of the defendants, to set aside a trust deed given by the judgment debtor to others of the defendants, and to have another of the defendants declared jointly liable for the debt. The court rendered a decree to enforce the payment of the debt, but refused to set aside the trust deed. Defendants paid in full the debt and the complainants accepted the entire amount decreed. Complainants then filed a bill of review to get so much of the decree modified as pertained to the trust deed. The court said "There is another reason why the decree in this case cannot be reviewed. It is that the appellees have paid, and the appellants have accepted, the entire debt which the decree was rendered to enforce. One who accepts the benefits of a verdict, decree, or judgment is thereby estopped from reviewing it, or from escaping from its burdens. Albright v. Oyster, 19 U. S. App. 651, 9 C.C.A. 173, 60 Fed. 644; Chase v. Driver, 92 Fed. 780, 786, 34 C.C.A. 668, 674; Brogham City v. Toltec Ranch Co. (C.C.A.) 101 Fed. 85."

Albright v. Oyster, 19 U.S. App. 651, 9 C.C.A. 173:

"Although this case involves an appeal from a final decree in equity and not a suit to set aside a final decree it states the above principal forcibly and the same equitable consideration would probably carry over in a suit to set aside an unfavorable portion of a final decree.

"The court said 'No rule is better settled than that a litigant who accepts the benefits or any substantial part of the benefits of a judgment or decree is thereby

estopped from reviewing and escaping from its burdens. . . . It was the receipt of a substantial benefit that they could not have obtained without the decree, and they ought not to be permitted to review the provisions of it with which they are not satisfied after taking the benefit of those they approve.' "

A 1940 Federal case involving a bill of review to open up and vacate a decree rendered four years previously after an acceptance of benefits under the prior decree cites the principle of Hill v. Phelps, supra, —Central Hanover Bank and Trust Co., et al., v. Wardman Real Estate Properties Inc., 31 F.S. 688.

Todd v. Moore (1921) 88 So. 447, 205 Ala. 451:

"Bill of review to set aside decree for 'error apparent upon the record' brought by appellants, after receiving the money paid into court for them in accordance with the decree and retaining the same for nearly two years before the filing of this bill. The only matter complained of was the amount which complainants were to receive and the court said that judgment could not be set aside after benefits had been accepted thereunder.' "

LeBaron v. LeBaron 205P. 910, 23 Ariz. 560 (1922) :

"Appellant in a previous suit (1918) had obtained a decree of divorce and had been awarded by the decree custody of the children. Property rights had also been adjudicated in the same suit. Appellee brought the present action against the appellant (1920) asking for a decree vacating and setting aside the decree of divorce granted the appellant so far only as such decree affected the property rights of the parties and awarded custody of the children. Appellee alleged fraud in the procurement of the divorce. From a judgment in the lower court in favor of the

appellee setting aside so much of the former decree in so far as such decree and order applied to the community property of the parties, or the custody of the children, and an order denying the appellant here a new trial, the appellant appealed. *Held:* That the judgment cannot be impeached in part only, where the fraud claimed affects the whole judgment." The court said further: (p. 914)

"The plaintiffs position can only be justified upon the proposition that, if she were able to prove the invalidity of the former decree in its entirety in this action, her right to have it set aside is assimilable to a right to property which she may voluntarily waive, and that she may permit the former decree to stand, though based on no legal ground, and relitigate the other dispositions made by the decree with which she is dissatisfied. To this proposition we cannot assent. The decree of divorce cannot be a rock foundation for plaintiff to build upon and one of sand for defendant. . . . it cannot be permitted that plaintiff relitigate and try by piecemeal that which has once been properly determined as a part of an integral whole, by a judgment which (so far as this record shows) plaintiff is neither able nor willing to overthrow."

Newell v. Newell 130 N.W. 743, 88 Neb. 705 is cited for the proposition that where a decree even if erroneous, grants both a divorce and alimony to the wife, the husband cannot have the provision for alimony stricken out, leaving that part of the decree for divorce stand.

The following group of cases involving divorce proceedings proceed on the theory that the acceptance of the benefits under a divorce decree by way of alimony, property, remarriage precludes the bringing

of a suit, or motion to have the former decree set aside in whole or part. The courts say that the person accepting the benefits is "estopped" from later questioning the decree. See Guelzo v. Guelzo 10 N.E. (2nd) 881, 292 Ill. App 151 (1937); Reppert v. Reppert, 241 N.W. 487, 214 Iowa 17; Green v. James 296 P 743; 1470 Okla. 273 (1931).

The contention of the appellee is that because of alleged mental deficiencies and consequently a weak mind, the assignment of securities, the stipulation as to property settlement and the provisions of the decree of divorce as to property settlement were obtained by undue influence and fraud.

While psychiatrists testified that in their respective opinions plaintiff is far below normal in mental status, the record when taken as a whole shows conclusively that he is sui juris, that he fully understands financial matters and that while he is a spendthrift and has little appreciation of the value of a dollar where his own pleasure is concerned, he is quite careful and conservative about how he spends money on others. His mother, who probably knew better than anyone else, considered him capable of handling quite a fortune. She made her will when he was about 14 years of age, leaving him more than $200,000.00 in trust, one-fourth of which she directed should be paid over to him on his arriving at 25 years of age, and another fourth thereof when he reaches 35 years of age. He was 19 years of age when his mother died and there is nothing in the record to indicate that his mentality is not as good now as it was when his mother executed the will, or was at the time of her death.

The reconciliation settlement was not unreasonable insofar as the record discloses. It appears to have

been entered into at the instance of Richard in the effort to get his wife to abandon the idea of divorce (for which she appeared to have ample grounds) and return to him. Not only is this true, but plaintiff ratified the agreement more than 5 months after its execution by manual delivery of the securities. See 9 Am. Jur. p. 389, Sec. 46 et seq. and cases there cited. He does not claim to have been thereafter a dutiful or faithful husband, but, on the contrary testified that in November before the baby was born in December, when his wife objected to indulging in sexual intercourse, because of fear that the unborn child might be thereby injured, he consorted sexually with a girl friend and on one occasion had his wife drive him to a house of ill-fame and wait in the car while he went into the house and satisfied his desire with a prostitute. He complains that thereafter his wife was not loving and kind to him. We are not surprised to find that the record reveals that she thereafter evidenced contempt and hatred toward him, for which we think she is not to be condemned. After such conduct, he deserved no marital consideration from her. In view of these facts, any reasonable property settlement he could have made with her would have been justified on her part. Neither the reconciliation settlement nor the affirmance in subsequent divorce proceedings was unreasonable.

Counsel for appellee admitted at the bar of this court in oral argument that if appellee possessed sufficient mentality not to be controlled by the will of Dorothy and Abbott, there was no merit in the case.

We are brought to the conclusion, after a full and fair consideration of the entire record, that both the

able master and learned chancellor misconceived the legal effect of the evidence when considered as a whole and placed too much emphasis on the testimony of the psychiatrists; and that a preponderance of the evidence when taken as a whole shows that while Richard may not be of normal mentality his weakness is not manifest in being easily led by others, but on the contrary, he is self-willed and stubborn and pursues such course as he may decide to follow regardless of the advice or persuasion of others.

The decree being manifestly against the weignt of the evidence, it becomes our duty to reverse it. See Fla. Nat. Bank v. Sherouse, 80 Fla. 405, 86 So. 279; Howell v. Blackburn, 100 Fla. 114, 129 So. 341; Lightsey v. Washington Park Properties, Inc., 93 Fla. 531, 112 So. 555; Bankers Finance Co. v. Dye, 88 Fla. 45, 100 So. 804.

The decree, insofar as it absolves Abbott from fraud, is affirmed, and, insofar as it requires the return of the jewelry described therein to Richard and insofar as it affirms the decree of divorce and requires the contribution for support of the child as provided in said decree, is affirmed; but, as to all other matters the decree is reversed with directions that insofar as the bill of complaint seeks to set aside, vacate and annul the reconciliation settlement or the property settlement as stipulated, supra, and as approved in the divorce decree the bill shall be dismissed, all costs to be prorated and taxed one-half against plaintiff and one-half against defendant.

Reversed and remanded with directions.

So ordered.

BROWN, C. J., WHITFIELD and ADAMS, JJ., concur.